UNITED STATES DISTRICT COURT　　　　SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| George C. Houston, *et al.*, | § § | |
| Plaintiffs, | § § | |
| *versus* | § § | Civil Action H-13-39 |
| SPX Corporation, | § § § | |
| Defendant. | § | |

# Opinion on Summary Judgment

1.　*Introduction.*

　　A man was crushed to death by a machine at work. His family and estate say that his employer was grossly negligent. Because he modified the machine to make it unsafe and ordered a subordinate to turn it on while he was inside, his employer will prevail.

2.　*Background.*

　　On October 11, 2012, George A. Houston was killed while installing a tool on a vertical lathe for SPX Corporation. He was working with Donovan Graham – a coworker whom he was training.

　　To install a tool, a machinist downloads a program that controls the lathe's operations. This program comes from the coding department, which is led by James Guckian. The program Houston downloaded was not defective. The machinist may then modify the program to tailor its movements to the specific tasks.

　　Houston had been working with lathes since 1996. Graham had only four months of experience. What Graham knew about lathes he had learned from Houston. On the morning of the accident, Houston told Graham that they were going to lower the lathe onto a wooden block. Once it stopped on the block, he planned to install the tool.

Houston programmed the lathe before Graham arrived for work. The computer was coded to clamp the tool in place and rotate the spindle. Graham thought that Houston had coded the machine to stop for the installation, but that instruction was not found in the computer code after the accident. The machine has no history of malfunctioning.

Houston stood inside the machine as he installed the block of wood. While Houston was still inside, Graham says that he ordered him to start it. Graham asked Houston if he was sure, and he said yes. Nobody except Graham heard this instruction.

When the lathe was activated, the turret began to spin as it came down. It did not stop as they had planned. Houston died when it crushed his leg, forehead, and left arm. After the accident, the lathe was tested. It was not defective.

The machine shop supervisor, Randy Yohner, thinks that there was a miscommunication between Houston and Graham because he says that nobody would activate a lathe while still inside. Yohner acknowledges, however, that Graham told him as early as 20 minutes after the accident that Houston said to start the lathe.

Under the worker's compensation statute, Houston and his family recovered once. They have sued SPX to recover more money because they say that it was grossly negligent.

3.  *Gross Negligence.*

In Texas, an injured worker nearly automatically recovers from his employer.[1] Unless he shows his employer was grossly negligent, it is not liable for damages in excess of this initial recovery.[2] Gross negligence is: (a) an act that a reasonable person would view as an extreme disregard of risk to others; and (b) a knowing disregard of risk likely to cause grave harm.[3]

SPX knew that the repairs on this lathe required Houston to be temporarily inside the machine. It did not know that Houston would modify the machine's safety features or instruct his coworker to turn it on while he was still inside. A reasonable machinist would exit the lathe before activating it. An employer has no duty to warn of obvious risks.[4] Because SPX could not

---

[1] Tex. Lab. Code § 408.001 (b).

[2] Tex. Lab. Code § 408.001 (c).

[3] Tex. Civ. Prac. & Rem. Code § 41.001 (11).

[4] Kroger Co. v. Elwood, 197 S.W.3d 793, 794 (Tex. 2006).

have anticipated that Houston would tell Graham to activate the machine while he was inside, it did not knowingly disregard an extreme risk.

SPX also knew that Houston had to work on the lathe when it was not "locked out and tagged out." A machine is locked if no power can reach it. An employee then places a tag on the lock to notify his coworkers. Houston's family says that the company's safety training says not to work on energized lathes.

Locking out and tagging out is usually prudent, but it cannot be done while changing tools on this lathe. Power is needed to clamp and un-clamp the tool being changed. Other precautions were in place. This accident happened after (a) the machine's program was modified by Houston and (b) he told Graham to activate it while he was inside.

Finally, an employer is not grossly negligent if it did not cause the injury. Assuming the tool could have been changed while locked and tagged, Houston was not killed because of a power surge or bad training. The cause of the accident was his unilateral recklessness or a miscommunication. SPX did not order Houston's reckless technique or knowingly tolerate his unsafe behavior. The company's conduct bore no relation to the accident.

SPX was not grossly negligent.

4. *Attribution.*

SPX is responsible for the gross negligence of its workers who (a) are corporate officers, (b) hire and fire subordinates, (c) perform duties that cannot be delegated, or (d) manage a department of the business.[5] If a worker's actions may be imputed to his employer, he is a vice principal whose action is the "very act of the corporation itself."[6]

Houston's family has identified four workers whose actions it says are attributable to SPX. Only the shop foreman, James Yohner, has enough responsibility to be a vice principal. He supervised the machine shop, hired and fired subordinates, ran meetings, and chose safety policies for the machinists.

---

[5] *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 389 (Tex. 1997).

[6] Id. at 391.

The other three workers – a computer programmer, safety specialist, and trainee – are entry-level workers with no supervisory responsibility. The family's claim that Graham – a mere machinist and trainee – is a vice principal is illustrative.

Jeffrey Feinberg, the "environmental health and safety manager," and James Guckian, the "senior" programmer, are support staff. A worker's title is often meaningless. Working to identify safety risks and program computers is important, but it is not the sort of responsibility that binds SPX. They do not direct operations or personnel. With little training, another worker could cover their job.

Only one of the four workers that Houston's family has identified is a supervisor. Assuming the family had facts linking one of the others to the accident – which it does not – SPX would not be liable.

5. *Houston's Last Words.*

Moments before Houston was crushed by the lathe, Graham says that he told him to start the machine. Worried this was dangerous, he asked Houston if he was sure, and he said yes. Nobody else heard this. Houston's family has moved to exclude this testimony as hearsay.

In an action by or against an estate, a decedent's statements are inadmissible unless they are corroborated by an uninterested party.[7] In Texas, corroboration does not have to be perfect; it is evidence that tends to confirm and strengthen the testimony.[8]

Graham has consistently explained to lawyers and his coworkers the same story about Houston's death. As early as twenty minutes after the accident, he told Randy Yohner and other coworkers that Houston had ordered him to activate the machine while he was inside.

The circumstances of the accident corroborate his testimony as well. There was a wooden block found inside. Lowering the arm to the block required activating the machine. Houston apparently thought that the machine had been programmed to stop on the block before it crushed him.

---

[7] Tex. R. Evid. 601(b).

[8] Lewis v. Foster, 621 S.W.2d 400, 404 (Tex. 1981).

Graham's statement to Yohner twenty minutes after the accident is not hearsay. Because he was still wrought with emotion, it was an excited utterance.[9] After Houston was killed, Graham was inconsolable. He ran sixty feet and collapsed. The paramedics had to examine and comfort him. Only twenty minutes elapsed between his friend's death and these comments – a infinitesimal amount of time to calm himself after a tragedy.

6.  *Conclusion.*

George C. Houston, Candis Houston, and the estate of George A. Houston have recovered once through worker's compensation. They will take nothing more from SPX Corporation.

The family's anguish at the loss of Houston is understandable. Their attacks on Graham – a trainee – are not.

Signed on April **2**, 2014, at Houston, Texas.

　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　Lynn N. Hughes
　　　　　　　　　　　　　　United States District Judge

---

[9] Rodriguez v. Quarterman, 204 Fed. Appx. 489, 495 (5th Cir. 2006).